Entered: December 13th, 2021
Signed: December 13th, 2021



THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   20-14583-TJC |
| Creative Hairdressers, Inc., *et al*. | * | Chapter   11 |
| Debtors | * | Jointly Administered with |
| | * | Case No.   20-14584-TJC |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF DECISION

Nicole Olsen ("Claimant") asserts a priority claim under 11 U.S.C. §507(a)(4)(A) for liquidated damages under the Fair Labor Standards Act for non-payment of wages to the employees of debtors Creative Hairdressers Inc. and Ratner Companies, L.C. (the "Debtors"). When the COVID-19 novel coronavirus pandemic struck, the Governor of Maryland, like governors around the country, ordered the closure of businesses such as the Debtors. The Debtors were unable to pay employees for the pay period in which its operations ceased. Employees were paid soon after the Debtors' bankruptcy filings and court approval was obtained. Claimant files the claim as class representative on behalf of all employees. She contends the delay in paying the wages gives rise to liquidated damages under the Fair Labor

1

Standards Act to all employees in an amount equal to the unpaid wages and seeks priority status for those damages. The Debtors object to the proofs of claim on several grounds, chief among them that the claims are not entitled to priority under §507(a)(4)(A) of the Bankruptcy Code.

The Court concludes that liquidated damages under the Fair Labor Standards Act are compensation for potential harm caused by delaying the payment of wages and are not "wages . . . earned" by employees as required by §507(a)(4)(A). Therefore, the Court sustains the objection to the priority asserted in the claims.

## Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. § 157(b)(2) and the Court has statutory and constitutional authority to enter a final order.

## Statement of Facts

Prior to the petition date, debtor Creative Hairdressers, Inc. ("CHI") was one of the nation's largest independent family-owned chain of hair salons, operating approximately 800 hair salons under the Hair Cuttery, Bubbles, and Cielo brands. ECF 6 ¶4.[1] CHI employed over 10,000 full and part time employees. *Id.* It operated salons in 16 states including the District of Columbia. *Id.*

In recent years before the bankruptcy filing, CHI found itself facing increased competition that led to eroding profitability. ECF 6 ¶7. CHI sought to address these challenges through a number of initiatives and the retention of an advisor and an investment banker. *Id.* ¶¶7, 10. The investment banker widely marketed CHI over a one-year period to a broad range on

---

[1] All references to the court record will be to Case No. 20-14583-TJC, unless otherwise indicated.

potential buyers and investors. *Id*. at ¶10. CHI also developed a business plan that included closing under-performing locations, reducing overhead, and addressing employee count. *Id.* The owners invested $7 million on a subordinated basis to provide working capital, and one owner provided credit support in the form of a $1 million limited guaranty on borrowings. *Id.* at ¶10. The results were promising. By late 2019 and early 2020, CHI was outperforming its business plans and projecting enhanced earnings for fiscal year 2020. *Id*. at ¶8.

All progress came to a complete standstill with the onset of the COVID-19 coronavirus pandemic. In March 2020, CHI was forced to close all of its salons and furlough most of its employees as states and local governments issued orders to address the spread of the virus. *See e.g.,* 47-7 Md. Reg. 375 (March 27, 2020) (reprinting Governor Hogan's March 23, 2020 executive order closing all beauty salons in Maryland); *see also, e.g.,* 52 N.J. Reg. 554(a) (April 6, 2020) (reprinting Governor Murphy's executive order closing all non-essential businesses in New Jersey). In New Jersey, where Claimant worked, CHI was required to close all of its locations by March 21, 2020, and by that date, CHI closed all other operations. *See* New Jersey Register, *supra*; ECF 14.

As a result of the sudden closure of CHI's salons, CHI was almost immediately depleted of virtually all liquidity. ECF 858 ¶4. CHI generated revenues from payment at point of sale, and it had virtually no receivables to provide ongoing liquidity. *See* Amended Schedule A/B at pp. 9-11, ECF 284 (showing no cash or receivables of value as of the petition date).

CHI had sufficient funds to meet its payroll obligations for the two-week period ending March 14, 2020. ECF 6 ¶11; ECF 23 ¶12. It lacked funds to pay employees for hours they worked for March 15 to March 21, 2020, the closure date. In usual times, the pay earned during

3

this period would be included in the two-week payroll earned through March 28, 2020 and paid on April 7, 2020. CHI could not pay the March 15 to March 21, 2020 wages on April 7, 2020.

The Debtors continued the search for investors or a purchaser, seeking to maintain the business as an operating company that could survive the pandemic and allow its employees to resume their careers. It entered into a sale transaction with HC Salons. A key element of the transaction was the buyer would provide debtor-in-possession financing to enable the Debtors to pay the missed April 7 payroll. ECF 6 ¶18.

CHI filed for chapter 11 protection on April 23, 2020. It filed with its petition several motions, including a motion for authority to borrow under the DIP financing arrangement and to pay pre-petition wages. ECF 14. In the declaration filed in support of the motion to pay wages, CHI's Chief Operating Officer emphasizes its concern that it be allowed to quickly pay its employees. ECF 6 ¶35. After an emergency hearing held on April 27, 2020, the Court granted the motion to pay pre-petition wages. ECF 71. Employees were paid soon after that hearing.

The sale transaction closed and the buyer is operating the business with many of the Debtors' former employees retained. The Debtors appear able to pay all administrative claims of the estate. The Debtors anticipate that little, if any, amounts will be available for general unsecured creditors.

Claimant initiated a class action complaint on behalf of all employees in the United States District Court for New Jersey on April 7, 2020, which was stayed by the filing of the bankruptcy case. *Id.* The complaint seeks pay for the hours worked between March 15 and March 21, 2020, liquidated damages, and other relief. *See* complaint attached to Claim No. 460-1.

Claimant then timely filed Claim No. 460-1 against CHI and Ratner Companies, L.C. in Case No. 20-14583 and Claim No. 21-1 against only Ratner Companies, L.C. in Case No. 20-

14584. The proofs of claim are otherwise identical. Because the claim for wages was satisfied when CHI paid them after the petition, Claimant seeks only liquidated damages under the Fair Labor Standards Act for the failure to pay the payroll on time. The claims assert §507(a)(4) priority status in the prophylactic amount of $4 million on behalf of all Debtors' employees. CHI's motion for a prepetition wages order sought approval for $3.1 million in pre-petition employee payments. ECF 14.

## Conclusion of Law

Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq*. (the "FLSA") provides for an award of liquidated damages against any employer who violates FLSA:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. §216(b). Claimant states a prima facie claim for liquidated damages because CHI did not pay its employees timely for the March 15 to March 21, 2020 payroll.[2] She contends the claim is entitled to priority under 11 U.S.C. §507(a)(4)(A), which provides fourth level priority status to:

> allowed unsecured claims, but only to the extent of $[13,650] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;

---

[2] The Debtors request that the Court exercise its discretion under FLSA §260 and deny the request for liquidated damages due to the extraordinary circumstances presented by the COVID-19 pandemic, notably the government mandated shutdown of all operations. FLSA §260 allows the court, in its discretion, to reduce or eliminate liquidated damages if the employer can establish that it acted in good faith and had reasonable grounds to believe the acts were not a violation of the FLSA. Given the Debtors' financial condition, the parties agree that the claim, if allowed, can only have meaningful value if it is entitled to priority. The Court therefore addresses the priority issue at this time.

11 U.S.C. §507(a)(4)(A). The dispute is whether an award of "an additional equal amount as liquidated damages" under FLSA §216(b) constitutes "wages . . . earned by an individual" under §507(a)(4)(A). The Court concludes it does not.

The term "wages" is not defined in the Bankruptcy Code.³ When a term at issue is not defined in the statute, the court applies the plain and ordinary meaning. *Matson v. Alarcon*. 651 F.3d 404, 408 (4th Cir. 2011). Wages are "payment[s] for labor or services, usually based on time worked or quantity produced." *Wage*, Black's Law Dictionary (11th ed. 2019).

When interpreting §507(a)(4)(A), the Court must be mindful that the provision creates a priority under the Bankruptcy Code. "Statutory priorities . . . are intended 'to assure payment, if possible, to certain classes of claims by requiring that they be paid before others are satisfied.'" *New Neighborhoods, Inc. v. W. Virginia Workers' Comp. Fund*, 886 F.2d 714, 718 (4th Cir. 1989) (quoting L. King, Collier Bankruptcy Manual §507.01 (1988)). Claims entitled to priority are paid before other unsecured claims. After the payment of priority claims, there is a presumption that the bankruptcy estate's remaining assets will be distributed equally among unsecured creditors. *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994).

"Thus, statutory priorities must be narrowly construed." *Id.* If one claimant is to be preferred over others, the purpose should be clear from the statute. *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006); *Nathanson v. Nat'l Labor Relations Bd.,* 344 U.S. 25, 29 (1952); *In re S. Star Foods, Inc.*, 144 F.3d 712, 714 (10th Cir. 1998) (priority statutes must be read narrowly because "the overriding objective in bankruptcy cases is equal distribution of the debtor's limited resources among its creditors"); *Dobbins*, 35 F.3d at 865 (heeds the

---

³ The parties did not argue that an award of FLSA liquidated damages is entitled to priority under the other enumerated terms in §507(a)(4), and the Court is satisfied that damages would not fall under one of those terms.

principle that statutory priorities must be narrowly construed in examining whether administrative expenses must be given superpriority status).

Keeping with these principles, bankruptcy courts generally construe narrowly the categories entitled to priority status under §507(a)(4). In determining the scope of "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" courts have extended §507(a)(4) priority to benefits that are akin to employee pay compensation. *See e.g., In re Circuit City Stores, Inc.*, 2009 Bankr. LEXIS 3158 (Bankr. E.D. Va. Oct. 6, 2009) (§507(a)(4) includes paid time off payable upon termination of employment); *see also e.g.*, *In re Cardinal Indus., Inc.*, 160 B.R. 83 (Bankr. S.D. Ohio 1993) (holding that a bonus is in the nature of compensation for work performed under 507(a)(4)[4]). Equally illuminating are cases where courts have declined to grant §507(a)(4) priority for other obligations related to employment. *In re Baldwin-United Corp.*, 52 B.R. 549 (Bankr. S.D. Ohio 1985) (holding that a cash guarantee related to stock option not eligible for priority because it is more akin to a "perk" rather than compensation); *Keim v. Growers Seed Ass'n*, 49 B.R. 17 (Bankr. N.D. Tex. 1985) (declining to extend priority to reimbursement for moving expenses); *In re Bersaglia*, 254 B.R. 376 (Bankr. E.D. Ky. 2000) (holding that workers' compensation benefits are outside the scope of wage priority).

The Supreme Court addressed the nature and purpose of FLSA liquidated damages in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). There, the Court noted that the liquidated damages provision is not penal in nature. *Id*. at 707. Rather, employees who receive less than their required pay "are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date." *Id*. The FLSA liquidated damage provision

---

[4] Section 507(a)(4) was previously numbered §507(a)(3).

"constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Id*. The damages are "reparations to restore damage done by . . . failure to pay [wages] on time." *Id*.

Viewed in this light, liquidated damages under FLSA are not "wages" for purposes of §507(a)(4). They are compensation for potential harm caused by delay in the payment of wages. The delay could give rise to harm too difficult to ascertain, and thus appropriate for a liquidated damages provision. Damages could take many forms, such as interest on credit card borrowings necessary to pay for basics, late charges for rent or car or mortgage payments, or worse, depending on the length of the delay. The potential for loss or damages for delayed wage payments is not trivial. But the compensation for these losses is not wages; it is "reparations to restore damage done by . . . failure to pay [wages] on time." *Id.*

Further support for this conclusion is found in *Matson*, *supra*. At issue was when did former employees "earn" severance compensation for purposes of §507(a)(4). The Fourth Circuit considered the dictionary definition of "earn" and concluded that, in the context of wages, salaries and commissions, "earn" means "to receive as equitable return for work done or services rendered." *Matson*, 651 F.3d at 408. FLSA liquidated damages are awarded as damages for the failure to pay wages timely. They are not "earned" as an "equitable return for work done or services rendered." *Id.*

Claimant contends *Brooklyn Sav. Bank* supports her position. She points to the Supreme Court's use of the term "compensation" in the phrase "compensation for the retention of a workman's pay which might result in damages" and contends that "compensation" means payment of wages. ECF 907 at p. 4. But "compensation" also means payment for damage,

injury or loss, and that is how the term is used by the Court. *Brooklyn Sav. Bank*, 324 U.S. at 707-709.

Claimant also relies on *Levin v. Levine*, 2011 WL 2295272, (S.D. Fl. 2011), contending the case "took for granted that liquidated damages had 507(a)(4) priority." ECF 907 at p. 3. In that case, the parties stipulated to a settlement that unpaid wages and FLSA liquidated damages were entitled to §507(a)(4) priority. Parties, however, enter into settlements for many reasons, and pointing to a stipulated settlement as support for a legal proposition is of limited aid to the Court. The holding of the decision, however, actually harms Claimant's position here. The parties disputed whether the attorney fees generated on behalf of the employees should be granted §507(a)(4) priority status. The employees argued that granting priority status to attorney fees incurred in preserving their underlying FLSA wage claims furthers the legislative purpose of the FLSA, which mandates an award of fees for successful claimants. The court concluded that its duty to narrowly construe §507(a)(4) led to the conclusion that attorney fees are not entitled to priority. *Levine*, 2011 WL 2295272 at *2. It agreed that "it may indeed be sound policy" to give priority status to FLSA attorney fee claims, but stated "it is up to Congress, not the courts" to provide that result. *Id*.

Claimant also states that FLSA liquidated damages have been given priority in a number of cases in recent years, and cites, in entirety, "*In re Buffets LLC, In re Mac Acquisition, In re Ignite Restaurants, and In re Hertz*." ECF 907 at p. 4. This general statement, with no citation to cases, orders, or decisions from which the Court can determine the nature of any determinations made by these courts, is not helpful. But Claimant's general point is that FLSA liquidated damages claims have been granted §507(a)(4) priority by consent or settlement in other cases. This is not surprising. Employees are recognized as the lifeblood of a business, and

FLSA importantly serves to protect the employees' right to pay. And the question of whether FLSA liquidated damages are entitled to §507(a)(4) priority is not wholly free from doubt. Therefore, the consensual resolution of the issue in other cases may well be warranted. Here, however, the Debtors ability to pay an additional, substantial administrative claim is questionable, and the parties seek a resolution from the Court. The Court concludes that the plain language of §507(a)(4) and the nature of FLSA liquidated damages awards requires excluding them from priority status.

## Conclusion

For the foregoing reasons, the Court will enter an order sustaining the Debtors' objection to the priority status of the claims.

cc:    Debtors
       Debtors' Counsel
       Claimant
       Counsel for the Claimant
       Counsel for the Committee of Unsecured Creditors
       United States Trustee

**END OF MEMORANDUM OF DECISION**